

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Randy/Lisa Dorsey | ) |
| | ) Case No. 06-3343 |
| Debtor(s) | ) |
| | ) (Related Case: 05-37927) |
| Randy Dorsey | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| Prokos Check Cashing | ) |
| | ) |
| Defendant(s) | ) |

## DECISION AND ORDER

This cause comes before the Court on the Plaintiff's complaint for violation of the automatic stay as set forth in 11 U.S.C. § 362(a). A trial was held on the matter, after which time the Court took the matter under advisement so as to afford the opportunity to fully consider the evidence and arguments raised by the Parties. The Court has now had this opportunity, and finds, for the reasons set forth below, that the Plaintiff's Complaint should be Dismissed.

## FACTS

The Defendant, Prokos Check Cashing (hereinafter "Prokos"), offers short-term loans to its customers at high rates of interest. On March 18, 2005, the Plaintiff/Debtor, Randy Dorsey, approached Prokos for the purpose of obtaining such a loan. On the same date, the Parties entered into an agreement (hereinafter "Agreement"), whereby Mr. Dorsey received a loan for $500.00 and agreed

Randy Dorsey v. Prokos Check Cashing
Case No. 06-3343

to repay $575.00 by April 1, 2005. As a part of the Agreement, Mr. Dorsey was required to leave, as security, a postdated check with Prokos in the amount of $575.00. The following language was printed above the signature line of the Agreement in large, bold letters:

> IT IS AGAINST THE LAW TO PASS BAD CHECKS!
>
> We at PROKOS CHECK CASHING will assist the authorities in order to be successful in the prosecution of such offenders!

Mr. Dorsey made no payments before the loan became due; resultantly, Prokos attempted to negotiate the check provided by Mr. Dorsey as security. However, the check was returned due to insufficient funds. Thereafter, Prokos sent Mr. Dorsey notice, as required by Ohio law, that unless he satisfied his obligation within ten days, Prokos would bring the matter regarding the check to the attention of the local prosecutor's office by registering a criminal complaint.

After sending the ten day notice, Prokos continued to contact Mr. Dorsey in an attempt to collect the amount owed and was apparently successful in collecting $200.00. Then, several months later, on August 5, 2005, Mr. Dorsey filed a petition under Chapter 7 of the Bankruptcy Code, listing Prokos as one of his unsecured creditors. Upon receiving notice of Mr. Dorsey's bankruptcy, Prokos immediately ceased all efforts to contact Mr. Dorsey regarding the debt. However, on September 15, 2005, Prokos registered a criminal complaint at the local police department against Mr. Dorsey for passing a bad check.

On October 22, 2005, Mr. Dorsey was arrested and charged with passing a bad check in violation of Ohio law. The arrest took place in front of his home and in the presence of his family, and, according to Mr. Dorsey's testimony, caused him a great deal of embarrassment. After the arrest, Mr. Dorsey enlisted the services of a defense attorney, who then informed the prosecutor that Mr. Dorsey had filed a bankruptcy petition wherein Prokos was listed as an unsecured creditor. On November 16,

Page 2

Randy Dorsey v. Prokos Check Cashing
Case No. 06-3343

2005, the criminal case against Mr. Dorsey was dismissed. Subsequently, this Court entered an order of discharge in Mr. Dorsey's bankruptcy case.

On June 21, 2006, Mr. Dorsey filed the instant complaint. The basis for the Complaint: Prokos violated the automatic stay of 11 U.S.C. § 362(a) when it, after having received notice of his pending bankruptcy, registered a criminal complaint against Mr. Dorsey. Based on this alleged violation, Mr. Dorsey seeks compensatory damages, punitive damages, and attorney fees, totaling $15,000.00. As support for this award of damages, Mr. Dorsey testified that he was injured by the arrest by virtue of the humiliation he suffered before his own family and also the humiliation he endured at work when he was faced with questions from his colleagues regarding the arrest. Moreover, Mr. Dorsey presented evidence showing that he incurred legal fees, totaling $1,500.00, in connection with his criminal proceedings.

## ANALYSIS

The question before the Court is whether Prokos violated the automatic stay of § 362(a) when it registered a criminal complaint against Mr. Dorsey despite having received notice of his pending bankruptcy. Pursuant to 28 U.S.C. § 157, a determination regarding the applicability of the stay, including a violation thereof, is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

Upon the commencement of a bankruptcy case, an automatic stay arises as a matter of law. 11 U.S.C. § 362(a). The Code further provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). For purposes of this provision, the qualifying word, "willful," simply means that, as Prokos admitted in this matter, the creditor knew of the debtor's pending bankruptcy. As has been stated before: a § 362(a) violation does not require

Randy Dorsey v. Prokos Check Cashing
Case No. 06-3343

that the creditor must have intended to violate the stay, but only that the acts which violate the stay must be intentional. *See, e.g,. Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen'l Motors Corp.*, 337 F.3d 314, 320 fn.8 (3rd Cir. 2003).

The scope of the stay is broad and will operate to enjoin essentially any act, whether the commencement or continuation thereof, against a debtor to recover on a prepetition claim. *In re Jones*, 348 B.R. 715 (Bankr. E.D.Va. 2006). The purpose served by such an injunction is to afford the debtor a 'breathing spell' against his or her creditors. *Koolik v. Markowitz*, 40 F.3d 567, 568 (2nd Cir.1994). The scope of the stay, however, while broad, is circumscribed in some respects. Relevant in this situation, Prokos argues that § 362(b)(1) excepts from the reach of the stay his act of registering a criminal complaint against Mr. Dorsey for passing a bad check.

Section 362(b)(1) provides:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay–

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor[.]

Although apparently clear on its face, – criminal actions are absolutely excepted from the scope of the automatic stay – the application of this provision is not necessarily so straightforward when the alleged criminal act is the very same act which gives rise to the debt. In this way, the facts of this case represent a very typical situation. By passing a bad check, Mr. Dorsey became liable to Prokos for a debt; but this same act, as Mr. Dorsey is now fully aware, can also be subject to criminal sanctions under Ohio law.

When the criminal act and the creation of the debt are closely intertwined, two divergent approaches have emerged as to how the implementation of a criminal prosecution relates to the

Page 4

automatic stay. On the one side, there exists the absolutist view – that § 362(b)(1) excepts from the reach of the automatic stay all criminal prosecutions against the debtor regardless of the underlying factual circumstances giving rise to the prosecution. As stated in the case of *In re Bibbs*, "the automatic stay does not apply to criminal prosecutions. Period." 282 B.R. 876, 880 (Bankr. E.D.Ark. 2002), citing *In re Gruntz*, 202 F.3d 1074, 1085 (9th Cir. 2000) (holding automatic stay does not stay state criminal prosecutions, even if the underlying purpose of the criminal proceeding is debt collection). *See also In re Hartung*, 258 B.R. 210, 214 (Bankr. D.Mont. 2000) (finding automatic stay does not prevent creditor from reporting a crime as every citizen has a duty to report criminal activity).

The other line of thought holds that a court should look to the creditor's motivation. And if the creditor's main motivation is debt collection, not the greater public good which underlies the basis of a criminal action, then the criminal prosecution should be held to violate the stay of § 362(a). *See, e.g., In re DeLay*, 48 B.R. 282, 286 (Bankr.W.D.Mo.1984) ("Maintenance of a criminal prosecution against a debtor violates letter and spirit of bankruptcy laws only if its principal purpose is to collect a dischargeable debt."). Prokos, of course, advocates against this latter position, and for the former, arguing that, as "a matter of black letter law, the actions about which [Mr. Dorsey] complains in this case are not violations of the automatic stay" because of the explicit exception thereto provided in § 362(b)(1). (Doc. No. 23, at pg. 2).

However, in the case of *In re Batt*, this Court was presented with this exact issue, and adopted a position contrary to that advocated by Prokos, holding that a creditor's motive is relevant in any analysis under § 362(a) and § 362(b)(1). 322 B.R. 776 (Bankr. N.D.Ohio 2005). The reason: a creditor should not, under the guise of a criminal prosecution, be able to utilize the criminal process to collect on its debt. *Id.* at 779. Furthermore, the Court still believes that this is the better view as it provides the necessary flexibility to address the myriad of situations which can present themselves. Thus, despite the invitation of Prokos to adopt a contrary application of the law, it remains this Court's position that when a creditor is involved in initiating a criminal action, its motive is still relevant.

Page 5

Randy Dorsey v. Prokos Check Cashing
Case No. 06-3343

Notwithstanding, as this Court also noted in *In re Batt*, "deference must be given to the strong policy consideration underlying the adoption of the criminal exception to the automatic stay under § 362(b)(1): that bankruptcy is to protect those in financial, not moral difficulty, and therefore bankruptcy is in no way to be used as a haven for criminals." *Id.* (internal citations and quotations omitted). Moreover, as has also been observed, there exists the reality that in almost every situation where a close nexus arises between the criminal action and the creation of the debt, a creditor's motives in seeking to have the debtor prosecuted will be mixed. *Id.* It is only natural that a creditor, while wanting to see justice done, would also like to get paid. Thus, to find, as Mr. Dorsey seems to suggest, a § 362(a) stay violation simply on the basis that a creditor is motivated by a natural desire to see that its debt is repaid, carries with it the potential to severely weaken what Congress made explicit: that under § 326(b)(1) criminal actions are not proscribed by the automatic stay of § 362(a).

Consequently, for these reasons, this Court, when looking at a creditor's motivation, will continue to apply the stringent test utilized in *In re Batt* wherein the Court explained that:

> so long as the creditor's *primary motive* is not the collection of a debt, but instead encompasses a true desire to see to it that the debtor is punished from violating the applicable criminal laws, no stay violation will exist for a creditor simply bringing the transgression to the attention and then cooperating with the person or agency charged with enforcing the criminal laws of the jurisdiction.

*Id.* (emphasis added). Although sometimes referred to as the mixed motive test, the pertinent question under this inquiry concerns the creditor's *primary* motivation with respect to the criminal action. If it was for collections, then the creditor's conduct will be construed as an "act" to collect on a debt as proscribed by § 362(a). On the other hand, if the creditor's primary motive was not to collect a debt, then the creditor's actions will be viewed as falling within the scope of the criminal exception to the stay as found in § 362(b)(1).

The burden falls upon the debtor to establish that the creditor's primary motive for being involved in the criminal action was to collect on its debt. *Id.* And as a practicable matter, in all but the

Page 6

most egregious circumstances, this burden will be difficult for the debtor to meet. This case is no exception, with there being insufficient evidence to show that Prokos registered its criminal complaint against Mr. Dorsey with the primary intent to collect on its debt. To the contrary, the evidence, if anything, suggests that Prokos had a more fundamental motive: a desire to deter similar conduct by others.

The deterrence of wrongful conduct is one of the fundamental goals served by the penal function in the criminal justice system. *Kimberlin v. U.S. Dep't of Justice*, 318 F.3d 228, 239 (D.C.Cir.2003). In this regard, the principal and a former employee from Prokos testified, convincingly, that it was company policy to initiate criminal actions against any and every party who passed a bad check. According to them, this was necessary to preserve value to the business because if word got out that no serious consequences would befall a person for passing a bad check with Prokos, others would likely consider engaging in such conduct.

As further evidence of this belief, the principal of Prokos further testified that he previously ran a video rental and convenience store whereat it was always his policy to prosecute shoplifters and people who did not return their rented movies. This position is also corroborated by the Agreement reached between Prokos and Mr. Dorsey, which was standard for all Prokos' transactions, wherein it was clearly set forth that if a bad check were tendered, the matter would be brought to the prosecutor's attention. Finally, as evidence that in registering a criminal complaint, it was not primarily motivated by a desire to collect on Mr. Dorsey's debt, it is also noted what Prokos did not do: it did not personally contact Mr. Dorsey after he had filed his bankruptcy petition.

The fact, as Mr. Dorsey suggested, that Prokos may have become entitled to award of restitution in the criminal matter does not change this result. An award of restitution is a matter of state-statutory law, which places the decision to make such an award entirely within the discretion of the state court, not the injured party. Resultantly, in the absence of some highly unique situation, it

Randy Dorsey v. Prokos Check Cashing
Case No. 06-3343

would be wrong to penalize Prokos for something over which it had no control. Similarly, the Court does not accept Mr. Dorsey's contention that the prosecutor was simply a collection agent for Prokos, with the assistant prosecutor vehemently denying such allegations. In fact, the assistant prosecutor testified that far from simply being a collection agent for area merchants, the prosecutor would often pursue a bad check charge against a person even when the person writing the check had come to an accommodation with the creditor.

In conclusion, the Court finds that Prokos did not violate the automatic stay set forth in § 362(a), as there was insufficient evidence to establish that Prokos' primary motive in registering a criminal complaint against Mr. Dorsey was to collect a debt. As such, the criminal exception to the automatic stay set forth in § 362(b)(1) applies in this case. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Complaint of the Plaintiff, Randy Dorsey, be, and is hereby, DISMISSED.

Dated: August 6, 2007

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Richard L. Speer
　　　　　　　　　　　　　　　　　　　　　United States
　　　　　　　　　　　　　　　　　　　　　Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 6th day of August, 2007 to:

Randy L. Dorsey
1517 Clinton St
Sandusky, OH 44870

Donald R. Harris
158 E. Market St, #302b
Sandusky, OH 44870

Prokos Check Cashing
88 East State Street
Athens, OH 45701

Howard B Hershman
608 Madison Ave, #930
Toledo, OH 43604

    /s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court